# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT ALLEN MEEKS REYNOLDS, O/B/O CRYSTAL LYNN REYNOLDS,<br><br>    Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Respondent, | Case No.: 1:18-cv-00205-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Robert Allen Meeks Reynolds's, on behalf of Crystal Lynn Reynolds (deceased),[1] Petition for Review (Dkt. 1), seeking review of the Social Security Administration's decision denying her application for Social Security Disability Insurance Benefits for lack of disability. *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On April 7, 2014, Petitioner Crystal Lynn Reynolds ("Petitioner") protectively filed an application for Title II Disability Insurance Benefits, alleging disability beginning March 30, 2014. This claim was initially denied on July 23, 2014 and, again, on reconsideration on October 22, 2014. On October 26, 2014, Petitioner timely filed a Request for Hearing. On May 25, 2016, Administrative Law Judge ("ALJ") Stephen Marchioro held a hearing in Boise, Idaho, at

---

[1] For the purposes of this Memorandum Decision and Order, "Petitioner" will refer to Crystal Lynn Reynolds.

**MEMORANDUM DECISION AND ORDER - 1**

which time Petitioner, represented by attorney Brad D. Parkinson, appeared and testified. Impartial vocational expert Cassie Mills also appeared and testified.

On November 25, 2016, the ALJ issued a Decision denying Petitioner's claims, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council and, on March 8, 2018, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's Decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing generally that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Dkt. 1). Specifically, Petitioner claims that (1) the ALJ's Step 3 determination is in error because he failed to appropriately consider whether Petitioner's impairments equal Listings 14.09(C) and 1.02(B); and (2) the ALJ's RFC determination is unsupported by substantial evidence where, after failing to fully credit the opinion of consulting examiner, Dr. Sant, he also failed to explain why he incorporated only certain portions of his opined limitations into [Petitioner]'s RFC while rejecting others that would be disabling. *See* Pet.'s Brief, pp. 1, 12-20 (Dkt. 17). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that she is entitled to Social Security Disability Insurance Benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id.*; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support an ALJ's finding/conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions reached by the ALJ. *See Richardson*, 402 U.S. at 401. The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. **DISCUSSION**

#### A.     **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "did not engage in substantial gainful activity during the period from her alleged onset date of March 30, 2014 through her date last insured of June 30, 2015." (AR 30).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform

**MEMORANDUM DECISION AND ORDER - 4**

basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "obesity; spine disorder of neurofibromatosis with dystrophic scoliosis of the thoracic spine, status post fusion surgery; and thoracic meningocele, status post reduction surgery." (AR 30).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 31-32).

The fourth step of the sequential process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments (including impairments that are not severe). *See* 20 C.F.R. §§ 404.1545, 416.945. On this point, the ALJ concluded:

**MEMORANDUM DECISION AND ORDER - 5**

> After careful consideration of the entire record, the undersigned finds that, throughout the date last insured, the claimant had the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a). She could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. She could occasionally balance, kneel, stoop, crouch, and crawl. She could occasionally reach overhead and push/pull bilaterally with the upper extremities. She had to avoid all exposure to excessive vibrations, all use of unguarded moving mechanical parts, and all exposure to unprotected heights. She needed the ability to alternate between sitting and standing, sitting for 45 minutes and then standing up to 45 minutes while remaining at workstation. She could occasionally operate foot controls bilaterally.

(AR 33).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Here, the ALJ found that Petitioner could not perform her past relevant work as a shift lead and/or telephone representative. *See* (AR 39). However, considering Petitioner's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including information clerk, document preparer, and ticket counter worker. *See* (AR 39-40). Therefore, the ALJ concluded that Petitioner "was not under a disability, as defined in the Social Security Act, at any time from March 30, 2014, the alleged onset date, throughout June 30, 2015, the date last insured." (AR 20).

**B.  Analysis**

    1.    <u>The ALJ Reasonably Evaluated the Opinion Evidence</u>

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. While the medical opinion of a treating physician is entitled to special consideration and weight, it is not necessarily conclusive. *See Rodriguez v. Bowen*, 876

**MEMORANDUM DECISION AND ORDER - 6**

F.2d 759, 761 (9th Cir. 1989). If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons for doing so, supported by substantial evidence in the record. *See id*. A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, Petitioner takes issue with the ALJ's analyses at steps three and four of the sequential process – contending, in particular, that the ALJ erred because (1) he failed to consider whether her impairments equal Listings 14.09(C) and 1.02(B), and (2) his RFC determination is unsupported by substantial evidence. *See* Pet.'s Brief, pp. 1, 12-20 (Dkt. 17). Both arguments rely on the opinions of certain of Petitioner's medical providers (namely, Rox Burkett, M.D., and Michael O. Sant, M.D.) and, likewise, the ALJ's consideration of those opinions. With this in mind, the Court initially addresses these predicate aspects below.

    a.    Rox Burkett, M.D.

On August 10, 2016, non-examining consultant, Dr. Burkett, opined that Petitioner's impairments meet or equal a Listing, stating in relevant part:

> With careful analysis it is recognized the claimant has severe, listing level spinal problems either alone in the T spine or in combination with the meningocele (dura sac that lines the spinal cord and extrudes into the chest cavity). It is noted by the

**MEMORANDUM DECISION AND ORDER - 7**

> treating neurosurgeon this could be life threatening. She has done all she could with surgery, followed up with physical therapy but with the severity of BOTH the scoliosis and the kyphosis and the meningocele she reasonably meets or equals several listings specifically 14.09C Ankylosing (fusion) of spine to 45 degrees or more. Or 1.02 major joint disorder with fusion of major joint with pain and dysfunction.
>
> To meet the scoliosis one needs 45 degrees of deformity but the combination of the 27 degrees of scoliosis and the addition of the 28 degrees of kyphosis add up to 55 degrees which is more than enough to meet the listing. It is my opinion the DDS did not even consider this and of the meningocele. The DDS did not factor in the <u>combination</u> of problems as called for by the POMs under (24505.030), the consideration for <u>chronic pain</u> (POMs 24505.061), and the <u>lack of sustainable function</u> (24510.057).
>
> . . . .
>
> It is my opinion the claimant could be found favorable from the AOD at least five different ways. Meet or equal 14.09C or 1.02 and a much reduced sustainable RFC with the inability to stand more than 1 hour or sit more than 3-4 hours in a work day. She has some ADLs that from time to time looks like she could function but again not 40 hours a week, weeks on end. She also would miss a fair amount of even sedentary work with medications and side effects from 2-3 different narcotics.

(AR 605-606) (emphasis in original, internal citations omitted).

After "carefully consider[ing]" these opinions and "closely review[ing] the evidence that [Dr. Burkett] argues supports a finding that the [Petitioner] meets or equals a listing," the ALJ assigned the opinions only "limited weight." (AR 37-38). To the extent Petitioner argues that the ALJ improperly rejected Dr. Burkett's above-referenced opinions (*see* Pet.'s Brief, pp. 14-15 (Dkt. 17)), the undersigned disagrees.

First, though Dr. Burkett had access to the medical record, he had never examined Petitioner before commenting on her functioning and concluding that she met or equaled Listings 14.09(C) and 1.02(B). *See* (AR 37). As to Dr. Burkett's criticism that the DDS examiners were not sufficiently qualified to analyze the nuances of Petitioner's case (because, in his mind, non-orthopedic surgeons or neurosurgeons "could not comprehend the complexity of her multiple spinal problems and ongoing severe pain and limits" (AR 603)), the ALJ pointed out that Dr.

**MEMORANDUM DECISION AND ORDER - 8**

Burkett's own experience was in "primary care" and neither an orthopedic surgeon nor a neurosurgeon. *See* (AR 37). According to the ALJ, "[Dr. Burkett's] experience appears to be similar to the experience the DDS examiners have and *which he argues renders them unqualified to evaluate the case*." *Id*. (emphasis added).

Second, Dr. Burkett's opinions assumed, in part, that Petitioner was on three narcotic medications which he contended was not fully appreciated by the DDS examiners:

> South Idaho Pain Institute all references noted the needed two or three different narcotics to control her pain (Morphine, Norco, Fentanyl patches), with ongoing severe back pain. The DDS evaluator noted only one narcotic. It must be fair to consider that pain and side effects of pain medications as allowed for and called for in the POMs. How could any person "sustain" or even be hired for any job on two narcotics, let alone three?

(AR 604) (internal citation omitted); *see also supra* (citing (AR 606) (Dr. Burkett indicating that Petitioner "would miss a fair amount of even sedentary work with medications and side effects from 2-3 different narcotics")). But, as the ALJ clarified, Dr. Burkett was mistaken – Petitioner actually testified that she uses narcotic pain medication as little as possible, and that she only takes Norco on an as-needed basis (and then only at night). *See* (AR 37) ("Therefore, the significant side effects from narcotic medications Dr. Burkett emphasizes are predicated on a premise that the claimant is taking three narcotic pain medications daily when in fact she only takes Norco on an "as needed" basis.") (citing (AR 68-69)).

Third, Dr. Burkett's reliance on the July 31, 2015 opinion from Andrew T. Dailey, M.D., (Petitioner's treating neurosurgeon) only goes so far. *See* (AR 605) (Dr. Burkett characterizing Dr. Dailey's letter as "perhaps the single most important statement and summary of the claimant's real problems") (citing (AR 607)). There, Dr. Dailey stated that Petitioner has a "severe life-threatening form of scoliosis which could result in paralysis," and that this be taken into consideration as to her "future capabilities for a job"; he did not, however, place any specific

**MEMORANDUM DECISION AND ORDER - 9**

limitations on Petitioner.  (AR 607); *see also* (AR 37) (ALJ stating:  "Dr. Dailey declined to offer an opinion on the claimant's functional limitations or ability to work.").  This opinion, however, is not inconsistent with the ALJ's findings – the ALJ *also* concluded that Petitioner's scoliosis was severe, later incorporating its corresponding limitations into Petitioner's RFC at step four of the sequential process.  *See supra*.  Therefore, inasmuch as Petitioner (through Dr. Burkett) argues that Dr. Dailey's July 31, 2015 opinion collides with the ALJ's conclusions, it is misplaced.

Fourth, Dr. Burkett's opinions that (1) Petitioner's "hardware will likely fail and or come undone" and (2) Petitioner will "likely be unable to walk in several years" are unsupported by the record.  (AR 606).  As the ALJ discussed, (1) neither Dr. Dailey nor Petitioner's other medical providers ever indicated as much in their treatment notes or opinions; (2) Dr. Burkett himself is not an orthopedic surgeon or neurosurgeon, and (3) "all the recent imaging after the claimant's surgery indicate the hardware is intact and stable."  (AR 37-38).  An ALJ is not required to accept medical opinions that are brief, conclusory, or inadequately supported by objecting findings.  *See Bayliss*, 427 F.3d at 1216.

Finally, Dr. Burkett criticizes Dr. Sant's opinions on Petitioner's limitations as "totally subjective" and that, instead, Dr. Dailey's opinions "should be given much more consideration."  (AR 605).[2]  It is clear that Dr. Sant's opinions do not neatly align with Dr. Dailey's, but it is incorrect to characterize them as wholly subjective as a result.  Indeed, the ALJ highlighted the fact that Dr. Sant actually examined Petitioner, performed standard orthopedic testing on

---

[2] It is somewhat ironic that Petitioner seems to be arguing here that Dr. Burkett's opinions (and those endorsing Dr. Dailey's opinions) should apply over Dr. Sant's where, elsewhere in her briefing, she argues that the ALJ improperly disregarded portions of Dr. Sant's opinions.  *See* Pet.'s Brief, pp. 15-20 (Dkt. 17); *see also infra* (addressing ALJ's handling of Dr. Sant's opinions).  While this is not a separate basis to justify the ALJ's rejection of Dr. Burkett's opinions, it does reflect the conflicting nature of the medical record.

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner, and reviewed Petitioner's medical records including images of her spine. *See* (AR 36, 38). In this setting, Dr. Sant's opinions are informed by, and the product of the objective signs and symptoms derived from his orthopedic examination of Petitioner herself. That they may conflict with Dr. Dailey's opinions, without more, is not enough to render them either improperly subjective or otherwise lacking as a basis for the ALJ's determinations.[3]

With all this in mind, the ALJ did not ignore Dr. Burkett's opinion concerning Petitioner's alleged inability to work full-time. Rather, he provided sufficient reasons for rejecting Dr. Burkett's opinion on what amounts to a disability determination. *See Rodriguez*, 876 F.2d at 762 (treating or examining physician's opinion on the ultimate issue of disability not conclusive); *see also* SSR 96-5p, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner.").

    b.  Dr. Sant

On June 24, 2016, Petitioner was sent for a post-hearing, post-date last insured consultative examination with Dr. Sant who opined that Petitioner could:

- Frequently/continuously lift/carry up to 10 pounds, occasionally lift/carry 11-20 pounds, and never lift/carry 21-100 pounds;

- Sit for one hour at a time, stand for 30 minutes at a time, and walk for 30 minutes at a time;

- Sit for six hours in an eight-hour day, stand for one hour in an eight-hour day, and walk for one hour in an eight-hour day;

- Reach occasionally with both hands;

---

[3] Moreover, such an argument, again, ignores the fact that Dr. Dailey did not opine on Petitioner's functional limitations and therefore cannot operate to upend the ALJ's conclusions on such points. *See supra*. Additionally, the ALJ did not adopt Dr. Sant's opinions in their entirety regardless. *See infra*.

**MEMORANDUM DECISION AND ORDER - 11**

- Handle, finger, and feel continuously with her right hand, and frequently with her left hand;

- Push/pull occasionally with both hands;

- Operate foot controls occasionally with both feet;

- Climb stairs/ladders, kneel, crouch, and crawl occasionally;

- Never stoop;

- Continuously tolerate unprotected heights, moving mechanical parts, and dust/odors/fumes/irritants;

- Occasionally tolerate operating a motor vehicle, humidity/wetness, and vibrations;

- Never tolerate extreme cold or heat; and

- Ambulate effectively without assistance, walk a block at a reasonable pace on rough or uneven surfaces, and climb a few steps at a reasonable pace when using a hand rail;

*See* (AR 587-592). Dr. Sant went on to find that Petitioner has:

- Normal range of motion of the cervical, shoulder, hip, lumbar, knee, elbow, forearm, ankle, wrist, and thumb;

- Normal bulk and tone to her musculature (full strength on both sides);

- Normal gait and balance; and

- The ability to heel and toe walk, perform a partial squat, get up from a chair, dress and undress herself, and get on and off the examination table unassisted.

*See* (AR 595-598). Ultimately, Dr. Sant recommended the following activity limitations for Petitioner:

> The patient appears to be able to walk functional distances without the use of an assistive device, but would have difficulty with prolonged standing, sitting, or heavy lifting, or carrying. She does not appear to have any limitations to handling objects, hearing, or speaking. With regard to the upper limbs, she does not appear to have any functional limitation to her upper extremities or to her hands. With regard to the lower extremities, she does not have any functional limitations to the lower extremities; specifically, though may have some difficulty with high impact activities and squatting or kneeling due to her back issues. With regard to her spine,

**MEMORANDUM DECISION AND ORDER - 12**

> she would not be able to tolerate repetitive bending, twisting, or stooping or squatting or kneeling due to her back issues. With regard to her spine, she would not be able to tolerate repetitive bending, twisting, or stooping, heavy pushing or pulling, or prolonged sitting or standing. I would place her lifting restrictions in the sedentary range of 20 pounds occasionally, 10 pounds frequently, and 10 pounds continuously. She would require frequent position changes as needed and would not be able to tolerate prolonged low intensity vibration or exposure to extremes of cold temperatures.

(AR 598-599).

The ALJ gave Dr. Sant's opinion "partial weight," incorporating some (but not all) of the limitations he described within the Petitioner's RFC. (AR 36).[4] On balance, the ALJ actually imposed more restrictive limitations than Dr. Sant; however, Petitioner argues that, in indicating that Petitioner needed the ability to alternate between sitting and standing (sitting for 45 minutes and then standing up to 45 minutes (*see* (AR 33)), the ALJ improperly rejected Dr. Sant's opinion that Petitioner can only stand and walk one hour each in an eight-hour day. *See* Pet.'s Brief, pp. 15-20 (Dkt. 17) ("Consider, over the course of an eight-hour day, the ALJ's alternating 45 minute sitting allowance and 45 minute standing allowance while remaining at the workstation would result in Claimant sitting for four hours and standing for four hours. Thus, the ALJ's RFC exceeds the exertional limitations identified by Dr. Sant's who opined that Claimant may only stand for 1 hour **total** in an 8-hour workday.") (emphasis added). Again, the Court disagrees.

To begin, Petitioner represents that "Dr. Sant's opinion does not provide for a sit/stand option, nor does it indicate that Claimant's impairments could be accommodated with an option

---

[4] Though not entirely clear, in giving Dr. Sant's opinion only partial weight, the ALJ seemed to criticize Dr. Sant's possibly inconsistent findings. *See, e.g.*, (AR 36) ("The undersigned has considered this opinion and adopted some of the opined limitations in residual functional capacity herein; *however, Dr. Sant noted on exam that the claimant had a normal gait, normal balance, was able to heel/toe walk and partial squat, had normal motor and sensation findings, and had normal range of motion of the lumbar and cervical spine and shoulders.*") (emphasis added).

**MEMORANDUM DECISION AND ORDER - 13**

that called for alternating positions every 45 minutes." *Id.* at p. 18. Though technically true, it is nonetheless not quite accurate when considering the nature and structure of the "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" that Dr. Sant completed – still, in addition to discussing Petitioner's abilities to sit, stand, and walk, Dr. Sant stated in no uncertain terms that Petitioner "would require frequent position changes as needed . . . ." (AR 599). Relatedly, the ALJ noted that, to accommodate her need to alternate between sitting and standing, Petitioner could sit for 45 minutes (Dr. Sant opined that Petitioner could sit for one hour), and then stand "up to" 45 minutes. *See* (AR 33). There is no requirement that Petitioner must alternate her sitting with standing *for* 45 minutes, only that she could stand *up to* 45 minutes. In this sense, the ALJ's conclusions could be read as congruent with Dr. Sant's opinions.

Setting those matters aside, the ALJ properly discounted aspects of Dr. Sant's opinions in any event. There is no dispute that Dr. Sant's opinions follow a one-time examination with Petitioner. Though this circumstance is not disqualifying in and of itself (particularly in the universe of examining and non-examining medical providers in a Social Security setting), it can contribute to opinions that are not as complete as they otherwise might be. And, in this instance, Dr. Sant's opinions are internally inconsistent – that is, he states that Petitioner can stand and walk for only a total of one hour in an eight-hour workday, but that she has normal gait and balance, is able to heel/toe walk, can partially squat, has normal range of motion and strength throughout her systems, and can walk a block and climb a few steps at a reasonable pace. *See supra* (citing (AR 587-599)). An ALJ may discount a doctor's opinion when it is internally inconsistent with that doctor's own findings. *See Bayliss*, 427 F.3d at 1216; *Morgan*, 169 F.3d at 601-02.

**MEMORANDUM DECISION AND ORDER - 14**

Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 30)) that impact her ability to work; however, the ALJ provided specific legitimate reasons for rejecting/questioning certain opinions contained in the medical record. These opinions were not given the weight Petitioner argues that they deserved, but such opinions were considered in the context of the surrounding medical record. The Court's duty here is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are conflicting medical opinions, testimony, and accounts that inform the ALJ's decisions on how to consider the various opinions. His decision to discount certain opinions while crediting others is supported by clear and convincing, specific, and legitimate reasons. Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

    2.    <u>The ALJ Did Not Err in Evaluating Whether the Severity of Petitioner's Impairments Meet or Medically Equal Listings 14.09(C) and 1.02(B) at Step Three of the Sequential Process</u>

As discussed above, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that impairment." *See* SSR 83-19; *see also* 20 C.F.R. § 404.1525; *Tackett*, 190 F.3d at 1099 (impairment meets or equals listed impairment only if medical findings (defined as set of symptoms, signs, and laboratory findings) are at least equivalent in severity to set of medical findings for listed impairment). Though a claimant's burden to establish, "[a]n

**MEMORANDUM DECISION AND ORDER - 15**

ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 512.

Petitioner argues that the ALJ erred in determining that her impairments do not meet Listings 14.09 (inflammatory arthritis) and/or 1.02 (major dysfunction of a joint) – specifically Paragraph C of Listing 14.09 and Paragraph B of Listing 1.02 – because Dr. Burkett's opinions establish as much. *See* Pet.'s Brief, pp. 12-15 (Dkt. 17) ("Dr. Rox Burkett opined that given Claimant's scoliosis and kyphosis and meningocele, she reasonably meets or equals several listings, specifically 14.09(c) and 1.02."). But the ALJ properly discounted Dr. Burkett's opinions (*see supra*); therefore, to the extent Petitioner's argument in this respect is premised upon Dr. Burkett's opinions, it is necessarily compromised as well and cannot establish the she meets a listed impairment.[5]

---

[5] To the extent Petitioner's argument on this point incorporates her testimony, she fails to acknowledge that the ALJ found her testimony to be inconsistent with the record. *See* (AR 38) ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .*") (emphasis added). Petitioner does not contest these findings. *See, e.g.*, *Wikoff v. Astrue*, 388 Fed. Appx. 735, 736 (9th Cir. 2010) ("Thus, the ALJ's adverse credibility determination supports the limited rejection of Dr. Dennis's opinion because it was primary based on Wikoff's subjective comments concerning her condition. And because Wikoff failed to show she had any marked limitations, she cannot establish that her impairments resulted in at least two of the B criteria.") (internal quotation marks and citations omitted); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject treating doctor's opinion if it is based on claimant's self-reports that have been properly discounted as not credible).

**MEMORANDUM DECISION AND ORDER - 16**

This is not to say that the ALJ did not have to consider whether Petitioner's impairments met Listings 14.09(C) or 1.02(B) – he absolutely did, and concluded:

> The claimant's representative argues that the claimant's conditions meeting Listings 1.02 and 14.09C.
>
> Listing 1.02 for *major dysfunction of a joint* requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint. The Listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in 1.00B2c and/or instability to ambulate effectively as defined in 1.00B2b. In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2c or the degree of difficulty in ambulating as defined in 1.00B2b. the claimant does not allege that she cannot ambulate effectively; she does not use an assistive device; and she testified that she could walk a couple of blocks.
>
> . . . .
>
> Listing 14.09C for *ankylosing spondylitis or other spondyloarthropathies* requires ankylosing spondylitis or other spondyloarthropathies, with: (1) ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); OR (2) ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity. There is no evidence that the curvature of the claimant's spine at 28 degrees meets the requirements of the Listing. There is no additional evidence that the claimant's spine curvature has increased; and, in fact, the evidence shows that her spine curvature had improved and remained stable with the surgical hardware in place. The claimant reported in October that she had a painful lump on the left side again and continued left upper back pain. She was noted to be fine neurologically but was sent for thoracic spine ex-rays for reassurance. X-rays showed stable appearance of the hardware without evidence of complication since previous CT scan.

(AR 32) (internal citations omitted). Combined with the ALJ's comprehensive consideration of the medical evidence in the balance of the Decision, the ALJ sufficiently explained the basis for his step three determination. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (it is

**MEMORANDUM DECISION AND ORDER - 17**

unnecessary for ALJ to state why claimant failed to satisfy every different section of the listing of impairments). In sum, Petitioner failed to show error in the ALJ's step three findings; Petitioner did not satisfy the criteria for Listings 14.09(C) and 1.02(B).

    3.    <u>The ALJ Did Not Err in Evaluating Petitioner's RFC</u>

The ALJ determined that Petitioner retains the RFC to perform a reduced range of sedentary work with certain limitations, and that there are jobs in the national economy that do not require activities precluded by her RFC. *See* (AR 33-41). In explaining his analysis, the ALJ reasoned:

> [T]he above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record and claimant's admitted activities of daily living do not sustain her allegations of continuing post-operative disabling pain and limitations. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

(AR 39). Petitioner contends that the ALJ erred on this issue, arguing that "the ALJ clearly failed to account for the limitations truly opined by Dr. Sant resulting in an RFC that is not supported by substantial evidence." Pet.'s Brief, p. 19 (Dkt. 17).

Petitioner's arguments in these respects are necessarily tethered to Dr. Sant's opinions and, correspondingly, the ALJ's consideration of the same. In turn, because such an argument rises and falls with the Court's above-mentioned consideration of that issue, it is not necessary to discuss the merits of the ALJ's RFC determination in great depth. Suffice it to say, for the reasons already articulated here, substantial evidence exists to support the ALJ's findings at the fourth and fifth steps of the sequential process. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly relied on vocational expert's testimony because "[t]he hypothetical that the ALJ posed to the [vocational expert] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

**MEMORANDUM DECISION AND ORDER - 18**

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, of which one is adopted by the ALJ, then a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, even though such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED: September 30, 2019

_____
Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**